# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

In re:
**RENE R. ORTIZ, DOUGLAS LYNN LINDSEY and
BETTY JANE LINDSEY, and VALERIE JONES,**
           **Debtors.**

**RENE R. ORTIZ, et al.,**
               **Plaintiffs,**

**v.**

**AURORA HEALTH CARE, INC.**                    **Case No. 12-C-0295**
              **Defendant.**

**KATHY BEMBENEK, et al.,**
               **Plaintiffs,**

**v.**

**AURORA HEALTH CARE, INC.,**
              **Defendant.**

---

## DECISION AND ORDER

Before me now are two bankruptcy adversary proceedings in which the plaintiffs allege that Aurora Health Care, Inc., ("Aurora") violated a Wisconsin statute prohibiting the unauthorized release of health-care records, Wis. Stat. § 146.82. The plaintiffs' claims are in federal court because Aurora made the allegedly unauthorized releases when it filed its proofs of claim in the plaintiffs' bankruptcy cases. Before being assigned to me, the two matters were proceeding in the bankruptcy court pursuant to 28 U.S.C. § 157(a) and the general order of this court referring all bankruptcy matters to the bankruptcy court. While the proceedings were in the bankruptcy court, that court granted Aurora's motions for

summary judgment.  The Seventh Circuit then granted the plaintiffs permission to take a direct appeal under 28 U.S.C. § 158(d)(2).  However, before the Seventh Circuit decided the appeal, the Supreme Court decided <u>Stern v. Marshall</u>, __ U.S. __, 131 S. Ct. 2594 (2011), in which it held that bankruptcy judges cannot enter final judgments on state-law claims such as the ones at issue in this case.  In light of <u>Stern</u>, the Seventh Circuit concluded that it did not have jurisdiction over the appeal because the order under review had not been entered by an Article III judge.  <u>See</u> <u>Ortiz v. Aurora Health Care, Inc. (In re Ortiz)</u>, 665 F.3d 906 (7th Cir. 2011).  It then remanded the proceedings to the bankruptcy court.  Following the remand, the bankruptcy court converted its summary-judgment decision into proposed findings of fact and conclusions of law and recommended that this court grant Aurora's motions for summary judgment.[1]  The parties have filed objections to the proposed findings and conclusions, which I address below.

## I.  BACKGROUND

The two adversary proceedings before me are the "<u>Ortiz</u>" adversary proceeding, E.D. Wis. Bankr. Case No. 09-2199, and the "<u>Bembenek</u>" adversary proceeding, E.D. Wis. Bankr. Case No. 09-2469.  These two proceedings are associated with five different bankruptcy cases: (1) <u>In re Ortiz</u>, E.D. Wis. Bankr. Case No. 07-22466; (2) <u>In re Lindsey</u>, E.D. Wis. Bankr. Case No. 08-27374; (3) <u>In re Jones</u>, E.D. Wis. Bankr. Case No. 07-25336; (4) <u>In re Bembenek</u>, E.D. Wis. Bankr. Case No. 07-30280; and (5) <u>In re Dandridge</u>, E.D. Wis. Bankr. Case No. 08-23680.  Rene Ortiz, Douglas Lynn Lindsey, and Valerie

---

[1]The bankruptcy court also asked that if this court does not accept the proposed findings and conclusions that it withdraw the reference of the adversary proceedings to the bankruptcy court pursuant to 28 U.S.C. § 157(d).

2

Jones are the plaintiffs in the <u>Ortiz</u> adversary proceeding.[2]  Kathy Bembenek and Susan

Dandridge are the plaintiffs in the <u>Bembenek</u> adversary proceeding.  Although these two

adversary proceedings were never formally consolidated, the bankruptcy court issued its

proposed findings of fact and conclusions of law in a single opinion that deals with both

cases.

The underlying facts are relatively simple.  Each plaintiff filed for bankruptcy under

Chapter 13.  In each Chapter 13 case, Aurora filed a proof of claim relating to the debtor's

outstanding medical bills pursuant to Federal Rule of Bankruptcy Procedure 3001, to which

it attached an itemized list of all services that it had provided to the debtor.  This list

contains a brief description of each service and enables a reader to identify the medical

conditions for which the debtor was treated.  Once a proof of claim is filed in a bankruptcy

case, it can be viewed by any member of the general public.  The plaintiffs contend that

Aurora's actions constituted violations of Wis. Stat. § 146.82.  They bring their claims under

Wis. Stat. § 146.84(1), which creates private causes of action for violations of Wis. Stat.

§ 146.82.

After Aurora filed its proofs of claim in the Ortiz, Lindsey, and Jones bankruptcies,

the debtors in those cases joined together and initiated the <u>Ortiz</u> adversary proceeding.

Around the same time, Bembenek and Dandridge filed a complaint in Milwaukee County

Circuit Court against Aurora based on Aurora's having released their health-care records

when it filed its proofs of claim in their bankruptcy cases.  Aurora removed the Bembenek

---

[2]At one point, the bankruptcy court certified a class in the <u>Ortiz</u> adversary
proceeding.  However, the court later decertified that class, and so as I find the proceeding
it involves only the claims of the three named plaintiffs.

3

and Dandridge case to the bankruptcy court under 28 U.S.C. § 1452, and it became the Bembenek adversary proceeding.

In the Ortiz adversary proceeding, Aurora filed a motion to dismiss in which it argued that the plaintiffs had failed to state claims for violations of Wis. Stat. § 146.82 because Aurora's releases fell within an exception that allows health-care records to be released to the extent that they are "needed for billing, collection or payment of claims." The bankruptcy court denied that motion.

On March 10, 2010, Aurora filed motions for summary judgment in both Ortiz and Bembenek. It argued that it was entitled to summary judgment on three independent grounds. First, Aurora argued that the plaintiffs were judicially estopped from pursuing their claims because they had failed to disclose them as assets in their bankruptcy cases. Second, Aurora argued that it was entitled to summary judgment based on Wisconsin's litigation privilege, which, Aurora argued, precludes liability for statements made in judicial proceedings. Third, Aurora argued that a plaintiff is entitled to relief under Wis. Stat. § 146.84(1) only if he or she can prove actual damages, and that in the present case no plaintiff could prove actual damages. The bankruptcy court denied summary judgment based on judicial estoppel and the litigation privilege but granted it on the ground that the plaintiffs were required to prove actual damages but had failed to do so. As already discussed, the Seventh Circuit granted the plaintiffs permission to take a direct appeal of the bankruptcy court's summary-judgment decision but, after Stern v. Marshall, determined that it lacked jurisdiction to decide the appeal and remanded the case to the bankruptcy court. The bankruptcy court then converted its summary-judgment decision into proposed findings of fact and conclusions of law and submitted them to this court.

4

The plaintiffs and Aurora have filed objections to the proposed findings and conclusions. The plaintiffs object to them insofar as they recommended that this court grant summary judgment to Aurora on the ground that the plaintiffs were required to prove actual damages but had failed to do so. The plaintiffs also raise two "procedural" objections. First, they object to the bankruptcy court's decision to issue proposed findings and conclusions in the first place, arguing that the Bankruptcy Code does not permit bankruptcy courts to enter proposed findings and conclusions in "core" proceedings, which these adversary proceedings are. Second, the plaintiffs argue that if the adversary proceedings are recharacterized as "non-core" proceedings, then this court is required to abstain from hearing them under the mandatory abstention provision found in 28 U.S.C. § 1334(c)(2).

Aurora objects to the proposed findings and conclusions insofar as they recommended that this court find that the plaintiffs are not judicially estopped from pursuing their claims. Aurora also raises the issue that the bankruptcy court rejected at the motion-to-dismiss stage of the Ortiz adversary proceeding—that the release of the plaintiffs' health-care records fell within the statutory exception relating to billing, collection or payment of claims.[3] Aurora does not object to the bankruptcy court's recommendation concerning the litigation privilege, and so I assume that it has abandoned that ground for summary judgment and will not discuss it further.

---

[3]After Stern v. Marshall was decided, the bankruptcy court did not revisit its decision on Aurora's motion to dismiss. However, I will treat its disposition of Aurora's motion as a recommendation.

5

## II. DISCUSSION

**A.    Plaintiffs' Objection to Submission of Proposed Findings and Conclusions**

The plaintiffs object to the bankruptcy court's decision to submit proposed findings of fact and conclusions of law on the ground that it had no statutory authority to do so. Under 28 U.S.C. § 157(c)(1), bankruptcy courts have authority to submit proposed findings of fact and conclusions of law to the district court in non-core proceedings.[4]  The present adversary proceedings are core proceedings, see Ortiz, 665 F.3d at 912 (finding that these proceedings are core), and so § 157(c)(1) does not explicitly authorize the submission of proposed findings of fact and conclusions of law.  However, § 157(c)(1) does not explicitly authorize the submission of proposed findings of fact and conclusions of law in core proceedings because Congress wanted bankruptcy courts to actually decide core proceedings, not merely make recommendations to the district court.  See 28 U.S.C. § 157(b)(1).  The Supreme Court, in holding in Stern v. Marshall that the Constitution does not allow bankruptcy courts to decide certain core proceedings, disrupted § 157's allocation of authority between bankruptcy courts and district courts.  Thus, the fact that § 157 does not explicitly state that bankruptcy courts have authority to issue proposed findings of fact and conclusions of law in core proceedings does not mean that bankruptcy courts are prohibited from doing so.  Moreover, when § 157 is read in light of Stern, it seems obvious that bankruptcy courts have authority to issue proposed findings of fact and conclusions of law in core proceedings in which they lack authority to enter final judgments.  The

---

[4]Section 157 makes a distinction between "core" and "non-core" proceedings. Core proceedings are defined by way of a nonexhaustive list that appears in 28 U.S.C. § 157(b)(2).  A proceeding that is not a core proceeding is a non-core proceeding.

6

purpose behind § 157 is to have bankruptcy courts decide certain bankruptcy matters and to have them make recommendations to district courts with respect to all other bankruptcy matters. It is evident from this purpose that Congress wanted bankruptcy courts to do as much as possible in bankruptcy cases. Thus, it stands to reason that if the bankruptcy courts cannot enter final judgments in the kinds of matters in which Congress wanted them to enter final judgments, Congress would want them to submit proposed findings of fact and conclusions of law to the district court in those matters. Accordingly, I conclude that the bankruptcy court did not exceed its statutory authority when it submitted proposed findings of fact and conclusions of law in the present proceedings.

In any event, even if the bankruptcy court exceeded its statutory authority in submitting proposed findings and conclusions, that would not make any difference in the present case. The proposed findings and conclusions are merely recommendations, to which I owe no deference, and so they do not prejudice the plaintiffs' rights in any way. 28 U.S.C. § 157(c)(1); Institut Pasteur & Genetic Sys. Corp. v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.), 186 F.3d 1356, 1364 n.4 (Fed. Cir. 1999) (noting that district court owes no deference to bankruptcy court's proposed findings of fact and conclusions of law). Although the plaintiffs ask that I "disregard" the proposed findings and conclusions, doing so would have no practical effect, since I owe no deference to the bankruptcy court's recommendations in the first place. Whether I consider the proposed findings and conclusions or disregard them, the end result is the same: I must make an independent decision on the matters before me.

7

**B.    Mandatory Abstention**

Next, the plaintiffs argue that I must abstain from hearing these proceedings under

28 U.S.C. § 1334(c)(2), which states as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 <u>but not arising under title 11 or arising in a case under title 11</u>, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under [28 U.S.C. § 1334], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(Emphasis added.)  The Seventh Circuit has found that the present adversary proceedings

involve causes of action "arising in" cases under title 11, <u>Ortiz</u>, 665 F.3d at 911–12, and

so under the terms of § 1334(c)(2) that I have emphasized above, abstention is not

required.[5]

The plaintiffs argue that, despite the language in § 1334(c)(2), I must abstain

because the bankruptcy court, in submitting proposed findings of fact and conclusions of

law, followed the procedures for non-core matters (which include matters that are only

"related to a case under title 11").  However, the bankruptcy court's decision to submit

proposed findings and conclusions does not somehow transform claims arising in cases

under title 11 into ones that are only related to cases under title 11.  No matter what the

bankruptcy court did, these are still core proceedings and the plaintiffs' claims are still

claims arising in cases under title 11.

---

[5]For a discussion of the three types of bankruptcy proceedings mentioned in § 1334—i.e., (1) those "arising under title 11," (2) those "arising in a case under title 11," and (3) those "related to a case under title 11"—see <u>Collier on Bankruptcy</u> § 3.01[3][e].

8

The plaintiffs might argue that Congress would want mandatory abstention to apply to proceedings arising in cases under title 11 in which, because of Stern, bankruptcy judges may not enter final judgment. However, mandatory abstention concerns whether the entire district court, which includes the bankruptcy court as a "unit" of the district court, see 28 U.S.C. § 151, must abstain from hearing a particular proceeding in favor of a state forum. Because mandatory abstention concerns the allocation of authority among state and federal courts, not the allocation of authority among federal judges, there is no reason to think that Congress would want mandatory abstention to turn on whether the federal judge who will enter final judgment on a state-law claim is a bankruptcy judge or a district judge. Thus, even after Stern, abstention is not required in any proceeding involving claims arising in cases under title 11.

Accordingly, I conclude that abstention is not required and will turn to the merits.

## C.     Judicial Estoppel

Aurora argues that it is entitled to summary judgment because the plaintiffs' claims are barred by judicial estoppel. Judicial estoppel is a doctrine that prevents a litigant from prevailing twice on opposing legal theories. See, e.g., Fed Commc'ns Comm'n v. Airidigm Commc'ns, Inc. (In re Airidigm Commc'ns, Inc.), 616 F.3d 642, 661 (7th Cir. 2010). Under the doctrine, a litigant who convinces a court to accept his or her position cannot in later proceedings repudiate that position and advance an inconsistent one. Id. The purpose of the doctrine is to protect the integrity of the judicial process—to avoid the appearance that a court has been misled. Id. Because judicial estoppel is intended to prevent

9

improper use of the courts, it is an equitable doctrine invoked by a court at its discretion. New Hampshire v. Maine, 532 U.S. 742, 750 (2001).

In arguing that judicial estoppel bars the plaintiffs' claims, Aurora relies on cases applying the doctrine to cases in which a debtor in bankruptcy denies owning a claim and then later, after the bankruptcy is over, attempts to pursue that claim. See, e.g., Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir. 2006). A legal claim (or chose in action) is an asset, and if that asset is part of the debtor's estate, the debtor must disclose it during the bankruptcy so that it may be administered along with the debtor's other assets for the benefit of the creditors. The cases hold that if the debtor conceals the claim during the bankruptcy and prevents the creditors from obtaining any benefits from the claim, she cannot after the bankruptcy is over pursue the claim on her own behalf. Id. Applying judicial estoppel in such circumstances "raises the cost of lying" and thereby encourages debtors to be truthful in their bankruptcy filings. Id. (quoting Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th Cir. 1993)).

Aurora argues that the principles discussed above apply in the present case because the plaintiffs did not disclose their claims as assets on their bankruptcy schedules. The bankruptcy schedules Aurora is referring to are the schedules listing all the property that a debtor owns. A debtor attaches such schedules to a bankruptcy petition at the time it is filed. The schedules ask the debtor to identify all personal property, including "[o]ther contingent and unliquidated claims of every nature." See, e.g., Ortiz Bankruptcy Petition, Schedule B, line 21. When the plaintiffs filed their petitions, they did not list their claims against Aurora—which are contingent and unliquidated claims—on their schedules. Of course, that was because at that time the plaintiffs' claims against Aurora did not yet exist,

10

since Aurora had not yet filed the proofs of claim containing the debtors' health-care records. However, according to Aurora, the plaintiffs were under a duty to amend their schedules to disclose property that they acquired after the filing of their petitions,[6] and therefore they should have amended their schedules to disclose their claims at some point after Aurora filed the offending proofs of claim. The plaintiffs never amended their schedules to disclose their claims, and the bankruptcy court confirmed the plaintiffs' Chapter 13 plans based on the original schedules. Thus, argues Aurora, the plaintiffs should be estopped from asserting their claims in the present proceedings.

Aurora's argument can be fairly characterized as a "gotcha" argument, and it is obvious that the purposes of the judicial-estoppel doctrine would not be served by applying it here. The plaintiffs, in failing to disclose their claims on their bankruptcy schedules, were not lying, attempting to hide assets from the bankruptcy court or their creditors, or otherwise making improper use of the judicial system. As far as the record reveals, the plaintiffs did not even realize that they had claims against Aurora under Wis. Stat. § 146.82 until long after the bankruptcy court confirmed their plans, and Aurora does not suggest that the plaintiffs should be penalized for failing to discover their claims before confirmation.[7] Moreover, once the plaintiffs discovered their claims, they informed the Chapter 13 trustee of their intent to file suits and offered the trustee the opportunity to join

---

[6]In a Chapter 13 case, unlike in a Chapter 7 case, property acquired after the filing of the petition becomes property of the estate. See 11 U.S.C. § 1306(a); In re Willett, 544 F.3d 787, 791 n.3 (7th Cir. 2008).

[7]In each of the plaintiffs' bankruptcy cases, only a couple of months elapsed between the time Aurora filed its proofs of claim and the time the bankruptcy court confirmed the plaintiffs' plans.

11

them, which he declined. <u>See</u> Aff. of Chapter 13 Trustee Thomas J. King; ECF No. 46 in E.D. Wis. Bankr. Case No. 09-2469. The <u>Ortiz</u> plaintiffs then filed their claims against Aurora in an adversary proceeding associated with their Chapter 13 cases. Although the <u>Bembenek</u> plaintiffs originally filed their claims in state court, Aurora removed that case to the bankruptcy court, and it became an adversary proceeding associated with the <u>Bembenek</u> plaintiffs' Chapter 13 cases. The <u>Ortiz</u> and <u>Bembenek</u> adversary proceedings were assigned to the same bankruptcy judge that had been handling all of the plaintiffs' Chapter 13 cases. Thus, soon after the plaintiffs filed their claims against Aurora, the bankruptcy court received notice of the existence of the claims. Finally, and perhaps most importantly, when the plaintiffs filed their suits, they filed them on behalf of their bankruptcy estates—which meant that any recovery would become part of their bankruptcy estates and benefit their creditors.[8] Thus, unlike the debtors in cases such as <u>Cannon-Stokes</u>, the plaintiffs were not attempting to conceal assets from their estates or their creditors and did

---

[8]In their adversary complaint, the <u>Ortiz</u> plaintiffs explicitly stated that they were pursuing their claims on behalf of their estates. The <u>Bembenek</u> plaintiffs did not state in their complaint that they were pursuing their claims on behalf of their estates, but as Chapter 13 debtors, they would have been. <u>See</u> <u>Cable v. Ivy Tech State Coll.</u>, 200 F.3d 467, 472–74 (7th Cir. 2006) (Chapter 13 debtor has standing to sue on behalf of estate). Indeed, when the plaintiffs gave notice to the Chapter 13 trustee that they intended to file suits, the trustee reminded them that any proceeds of the suit would become property of their estates. <u>See</u> Aff. of Chapter 13 Trustee Thomas J. King ¶ 8. Ortiz and Jones still have open Chapter 13 cases, and so they are still prosecuting these proceedings on behalf of their estates. Lindsey's and Dandridge's bankruptcy cases were dismissed for failing to comply with plan terms, and so they are currently pursuing their claims for their own benefit. Bembenek's case was converted to Chapter 7, under which after-acquired property is not estate property, and so she too is currently pursuing her claim for her own benefit. However, at the time these adversary proceedings were filed, all of the plaintiffs had open Chapter 13 estates and were at that time pursuing their claims on behalf of their estates.

12

not make improper use of the courts.  Accordingly, Aurora's motion for summary judgment on the basis of judicial estoppel will be denied.

**D.      Exception for Billing, Collection or Payment of Claims**

Aurora next argues that it did not violate Wis. Stat. § 146.82 because its actions fell within what I will call the "billing and collection" exception to the statute.  That exception provides that health-care records may be "released upon request without informed consent . . . [t]o the extent that the records are needed for billing, collection or payment of claims." Wis. Stat. § 146.82(2)(a)3.  Aurora argues that it needed to release the plaintiffs' records in order to comply with the Federal Rules of Bankruptcy Procedure.

Federal Rule of Bankruptcy Procedure 3001, which prescribes the form and content of a proof of claim, states that when a claim is "based on a writing, the original or a duplicate shall be filed with the proof of claim."  Rule 3001 also requires that the proof of claim "conform substantially to the appropriate Official Form," which in this case is Official Form 10.  When Aurora filed its proofs of claim in the Ortiz and Jones bankruptcies, it used the April 2007 version of Official Form 10, which was the current version at the time.  That version contained the following instruction:

> **7.  Supporting Documents:**  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. . . .  If the documents are not available, explain.  If the documents are voluminous, attach a summary.

In the detailed instructions that accompanied the form, the supporting-documents requirement was explained as follows:

> You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a

13

summary of those documents.  If documents are not available, you must attach an explanation of why they are not available.

Official Form 10 was amended in December 2007, and when Aurora filed its proofs of claim in the Lindsey, Bembenek and Dandridge bankruptcies, it used that version.  The amendment changed the instructions to Official Form 10 regarding supporting documents.  The following instruction appeared on the form itself:

> **7.  Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements.  You may also attach a summary.  Attach redacted copies of documents providing evidence of perfection of a security interest.  You may also attach a summary.  (See definition of "redacted" on reverse side.)

The definition of "redacted' on the reverse side of the form read as follows:

> A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information.  A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

In December 2008, after Aurora submitted the proofs of claim at issue in the present proceedings, Official Form 10 was amended again, and this time filers were instructed to not disclose confidential health-care information.  The form as it exists today reads as follows:

> **7.  Documents:** Attach redacted copies of any documents that show the debt exists and a lien secures the debt.  You must also attach copies of documents that evidence perfection of any security interest.  You may also attach a summary in addition to the documents themselves. . . .  If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. . . .

14

(Emphasis added.)  The definition of "redacted" in the current version of the form states as follows:

> A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information.  A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth.  <u>If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.</u>

(Emphasis added.)

Aurora contends that the Bankruptcy Rules and the versions of Official Form 10 in effect at the time it filed its proofs of claim required it to attach itemized lists of the services it provided to the plaintiffs, and that therefore the release of the plaintiffs' health-care records was "needed for billing, collection or payment of claims."  I will assume that the itemized lists that Aurora attached to the proofs of claim were the kinds of supporting documents called for by Official Form 10, and that therefore Aurora "needed" to attach those lists to the form in order to comply with Bankruptcy Rule 3001.  However, the billing-and-collection exception states that health-care records may be "released" only "<u>[t]o the extent</u> that the records are needed for billing, collection or payment of claims."  Wis. Stat. § 146.82(2)(a)3 (emphasis added).  Here, Aurora's release went beyond the extent needed for collections purposes.  Although Aurora arguably needed to attach the lists to its proofs of claim—and therefore needed to release the lists to the bankruptcy court and possibly to some of the other participants in the bankruptcy cases—it certainly did not need to file its proofs of claim in a manner that resulted in a release of the plaintiffs' medical information to the general public.  The local rules of this district in effect at the time Aurora

15

filed its proofs of claim authorized parties to request permission to file documents under seal.  See Gen. L.R. 79.4 (E.D. Wis. 2003).[9]  Moreover, a general procedural order in effect in this district in 2007 and 2008 urged filers to "[e]xercise caution" when filing documents in cases designated for electronic filing (which the present bankruptcy cases were) that contained, among other types of sensitive information, "medical records, treatment and diagnosis."  See Proc. Order at 4 (E.D. Wis. Sept. 29, 2003); Proc. Order at 5 (E.D. Wis. Dec. 1, 2007).  That procedural order authorized parties to redact sensitive information from their filings and to file unredacted versions under seal.  Thus, since Aurora could have sought permission to file its proofs of claim under seal or redacted the plaintiffs' medical information from the proofs of claim, it had no need to release the plaintiffs' health-care records to anyone other than the bankruptcy court and the other participants in the bankruptcy cases.  In filing its proofs of claim with the medical information open for public inspection, then, Aurora's release went beyond the extent needed for billing, collection or payment of claims.[10]

_____

[9]The local rules of this district apply in bankruptcy court to the extent that they are not inconsistent with the Federal Rules of Bankruptcy Procedure or the local rules of the bankruptcy court. See LR 9029 (Bankr. E.D. Wis. 2003); LR 9029 (Bankr. E.D. Wis. 2007); LR 9029 (Bankr. E.D. Wis. 2010).

[10]Aurora cites State v. Allen, 200 Wis. 2d 301 (Ct. App. 1996), a case in which the Wisconsin Court of Appeals found that a release fell within the billing-and-collection exception to Wis. Stat. § 146.82.  However, unlike in the present case, the release in Allen was made only to persons who "needed" to see the records for billing and collection purposes—i.e., investigators for a county agency who were attempting to determine whether the defendant had committed fraud when he caused the county agency to pay for certain medical services.  Aurora contends that this is a "distinction without a difference" because "[n]owhere does section 146.82 suggest that the extent of the disclosure is relevant to the billing and collection exception; whether the medical information is revealed to one person or 500 should not . . . matter if the records are being used for billing, collection or payment of claims."  Aurora's Objections at 8, ECF No. 185 in E.D. Wis.

16

Aurora contends that because the instructions to Official Form 10 did not mention the possibility of redacting medical information from supporting documents until December 2008—after Aurora filed its proofs of claim in the present bankruptcies—it "needed" to file them in the public record. However, even though the forms did not explicitly state that redacting medical information or filing proofs of claim under seal were options until December 2008, those options were nonetheless available at the time Aurora filed its proofs of claim, and I do not understand Aurora to be arguing that they were not. Since those options were available, Aurora did not "need" to release the plaintiffs' information to the general public by way of an unredacted, unsealed filing.

Aurora also argues that the billing-and-collection exception authorizes the release of health-care records even if the release is not absolutely necessary to billing, collection or payment of a claim. Insofar as Aurora is arguing that a custodian of health-care records need not go to unreasonable lengths to keep information confidential during billing and collection of a claim, it might be right. For example, the statute might not require a health-care provider to comb through a twenty-page itemized invoice before releasing it to a collections agency to make sure that it does not contain a few charges that have already been paid and that the collections agency does not "need" to see. However, in the present case, Aurora did not have to go to unreasonable lengths in order to prevent the release of the plaintiffs' health-care records to the general public. It could have simply redacted the

---

Bankr. Case No. 09-2199. However, as already noted, the billing-and-collection exception itself states that the extent of the disclosure is relevant. Moreover, if a disclosure needs to be made to only a small number of people in order to serve a billing or collection purpose, it obviously matters if the health-care provider also releases the patient's records to 500 other people who do not need to see them.

17

descriptions of the services altogether or filed the attachments under seal.  Thus, although

a release might not need to be absolutely necessary in order to qualify for the billing-and-

collection exception, that does not help Aurora here.  Aurora could have easily released

the records to the bankruptcy court and the other litigants without also releasing them to

the general public.  Accordingly, Aurora is not entitled to summary judgment based on the

billing-and-collection exception to Wis. Stat. § 146.82.

**E.    Actual Damages**

The plaintiffs bring their claims under Wis. Stat. § 146.84(1), which provides causes

of action for violations of Wis. Stat. § 146.82.[11]  Two paragraphs of this statute provide

damages remedies—one for knowing and willful violations, and the other for negligent

violations.  The plaintiffs focus on the paragraph involving knowing and willful violations,

which provides as follows:

> Any person, including the state or any political subdivision of the state, who
> violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be
> liable to any person injured as a result of the violation for actual damages to
> that person, exemplary damages of not more than $25,000 and costs and
> reasonable actual attorney fees.

Wis. Stat. § 146.84(1)(b).  Aurora argues that because the plaintiffs have not incurred

"actual damages" as a result of the violations of Wis. Stat. § 146.82—and by "actual

damages," Aurora seems to mean things such as lost wages or medical expenses—they

are not "person[s] injured as a result of the violation," and therefore are not entitled to

---

[11]Wis. Stat. § 146.84(1) also provides causes of action for violations of Wis. Stat.
§ 146.83, which gives patients a right of access to their health-care records.  However, that
right is not at issue in these proceedings.

18

recover anything under Wis. Stat. § 146.84(1)(b). The plaintiffs argue that they are persons injured and are entitled to recover even if they cannot prove actual damages.

To resolve the parties' dispute, I must interpret Wis. Stat. § 146.84(1)(b). When interpreting a state statute, a federal court applies the same principles of statutory construction that a state court would apply. See, e.g., Karlin v. Foust, 188 F.3d 446, 457 (7th Cir. 1999). In Wisconsin, the relevant principles are stated in State ex rel. Kalal v. Circuit Court for Dane County, 271 Wis. 2d 633, 658–67 (2004). The court begins its interpretation by focusing on the language of the statute. If the language is clear, the inquiry ordinarily stops. Id. at 663. If the language is ambiguous, the court may resort to "extrinsic sources," which are typically items of legislative history. Id. at 666. However, legislative history generally may not be consulted if the language is unambiguous. Id. An exception to this general rule states that legislative history may be consulted to "confirm or verify a plain-meaning interpretation." Id. at 666–67.

Before addressing the parties' arguments, it is important to point out that, in ordinary legal usage, there is a distinction between "injury" and "damages." "Injury" is "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice." Black's Law Dictionary 789 (7th ed. 1999). In this sense, "injury" is similar to the term "damage," which means "loss or injury to person or property." Id. at 393. "Damages," on the other hand, are the sum of money which a person injured is entitled to receive from the wrongdoer as compensation for the injury. Id. There is thus a distinction between "injury" or "damage" on the one hand, and "damages" on the other. See Bryan A. Garner, A Dictionary of Modern Legal Usage 243 (2d ed. 1995) ("[T]he word 'damage,' meaning 'loss, injury, or deterioration,' is to be distinguished from its plural,—'damages,'—which means

19

a compensation in money for a loss or damage." (Internal quotation marks omitted)).

Garner gives the following sentence as an example of the distinction: "After actual <u>damage</u>

is shown it is unnecessary to show its money extent to sustain a judgment for exemplary

<u>damages</u>." <u>Id.</u>; <u>see also</u> <u>Hennekens v. Horel</u>, 160 Wis. 2d 144, 153–54 (1991).

Aurora, in arguing that the plaintiffs are not "persons injured," points out that the

plaintiffs have not incurred any monetary losses as a result of Aurora's violations of Wis.

Stat. § 146.82, such as lost wages or medical expenses. However, it does not follow from

the fact that the plaintiffs have not incurred any monetary losses that they have not been

injured. As the Wisconsin Supreme Court has recognized:

> Monetary loss is not the only form of actual damage. One form of actual
> damage is injury to a legal interest or loss of a legal right. Injury to a legal
> interest or loss of a legal right often occurs without a contemporaneous
> monetary loss. However, we have held that injury to a legal interest or loss
> of a legal right constitutes actual damage before such an injury or loss
> produces monetary loss.

<u>Hennekens</u>, 160 Wis. 2d at 153–54. In the present case, Wis. Stat. § 146.82 gives a

person a legal right against an unauthorized release of his or her health-care records.

Thus, an unauthorized release of health-care records is itself an injury to the person whose

records were released, even if that release does not produce a contemporaneous

monetary loss. It follows that the plaintiffs suffered injuries when Aurora released their

health-care records to the general public by filing them on the bankruptcy court's public

docket. Accordingly, the plaintiffs are "person[s] injured" within the meaning of Wis. Stat.

§ 146.84(1)(b).

Although the plaintiffs have been injured, they might not be able to prove actual

damages. That is, they might not be able to express their injuries in terms of money. In

20

the bankruptcy court, the plaintiffs asserted that they could prove actual damages, but in response to Aurora's motion for summary judgment claiming they could not, the plaintiffs did not attempt to show what their damages were. In their objections to the bankruptcy court's proposed findings of fact and conclusions of law, the plaintiffs likewise do not attempt to prove actual damages. Instead, they argue that they are entitled to nominal damages. Aurora argues that to maintain an action under Wis. Stat. § 146.84(1)(b), the plaintiffs must be able to prove actual damages. I thus turn to the question of whether proof of actual damages is a prerequisite to recovery under Wis. Stat. § 146.84(1)(b).

The text of Wis. Stat. § 146.84(1)(b) states that a person who violates Wis. Stat. § 146.82 (or Wis. Stat. § 146.83) "shall be liable" to any "person injured" by the violation for "actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees." As already discussed, the plaintiffs are persons injured by Aurora's violations of Wis. Stat. § 146.82. By the plain text of the statute, then, Aurora is liable for actual damages, exemplary damages, and costs and attorney fees. The text does not contain any indication that a person injured must prove actual damages before the violator is liable for exemplary damages, costs and attorney fees. To the contrary, the use of the coordinating conjunction "and" makes clear that liability for any of the items enumerated does not depend on the person injured having proved that he or she is entitled to recover any of the other items. See Friendship Vill. of Greater Milwaukee, Inc. v. City of Milwaukee, 194 Wis. 2d 787, 793–94 (Ct. App. 1995) ("[t]he purpose of a coordinating conjunction is to link words of equal importance"). Thus, a plaintiff may recover exemplary damages, costs and attorneys fees even if he or she cannot prove actual damages, just like a plaintiff who proceeds pro se may recover actual

21

damages, exemplary damages and costs, even though he or she will not be able to prove actual attorney fees. The violator's liability for each item is independent of the plaintiff's having incurred or being able to prove the others.[12]

Aurora argues that interpreting the statute to allow the recovery of exemplary damages without proof of actual damages would be inconsistent with a Wisconsin common-law rule stating that exemplary damages generally may not be awarded in the absence of proof of actual damages. See Jacque v. Steenberg Homes, Inc., 209 Wis. 2d 605, 614–15 (1997) (noting that general rule under Wisconsin common law is that punitive damages are not available in the absence of compensatory damages). However, the right and cause of action at issue in these proceedings were created by statute, and the text of the statute does not indicate an intent to incorporate the general common-law rule. Moreover, the Wisconsin common law recognizes that, in some cases, such as those involving an intentional trespass to land, exemplary or punitive damages may be awarded even in the absence of provable actual damages. Id. at 621. In these cases, the violation of the right at issue does not normally cause substantial monetary loss, yet society has a strong interest in deterring the violation regardless of the amount of measurable harm that results, and thus punitive damages are allowed. Id. at 616–17. The Wisconsin Supreme

---

[12]Aurora argues that this interpretation somehow renders the phrase "to any person injured as a result of the violation" surplusage. See Kalal, 271 Wis. 2d at 663 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). However, the function of the phrase is to identify the person to whom the violator is liable, which in the present case is the person whose records were released in violation of Wis. Stat. § 146.82. If the phrase were omitted, the statute would say that the violator "shall be liable" for actual damages, exemplary damages, and costs and attorney fees without specifying to whom.

Court emphasized this point with the following hypothetical from <u>Merest v. Harvey</u>, 128

Eng.Rep. 761 (C.P.1814):

> Suppose a gentleman has a paved walk in his paddock, before his window, and that a man intrudes and walks up and down before the window of his house, and looks in while the owner is at dinner, is the trespasser permitted to say "here is a halfpenny for you which is the full extent of the mischief I have done." Would that be a compensation? I cannot say that it would be.

<u>Jacque</u>, 209 Wis. 2d at 616. The right at issue in the present proceedings is very similar

in relevant respects to the right to exclude others from land at issue in a trespass case.

Like a trespass to land, an unauthorized release of health-care records is unlikely to cause

much monetary harm, yet, as evidenced by the existence of Wis. Stat. § 146.82, it is the

kind of act that society finds offensive and wants to deter. Indeed, a third party reading

your health-care records without your permission is not that different from a third party

watching you eat dinner through your window—both involve an invasion of privacy. Thus,

the text of Wis. Stat. § 146.84(1)(b) is not inconsistent with the common law's approach

to awarding punitive damages in the absence of actual damages.[13]

Finally, Aurora argues that the legislative history of Wis. Stat. § 146.84 establishes

that an award of actual damages is a prerequisite to recovery. The legislative history on

which Aurora relies consists of a partial veto exercised by Governor Tommy Thompson in

1991 and a veto message in which he explains his decision to exercise his partial-veto

---

[13]I also note that even if the statute were interpreted to mean that the plaintiffs could not recover exemplary damages without proving actual damages, and the plaintiffs could not prove actual damages, it would not follow that Aurora would be entitled to summary judgment dismissing the plaintiffs' causes of action altogether. The plaintiffs might still be entitled to nominal damages, costs and attorney fees.

23

power.  The bill containing the language that became Wis. Stat. § 146.84(1)(b), as passed

by the legislature in 1991, stated in relevant part as follows:

> Any person, including the state or any political subdivision of the state, who
> violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be
> liable to any person injured as a result of the violation for actual damages to
> that person; exemplary damages of not less than $1,000 for each release of
> information in violation of s. 146.82, each denial of the rights to inspect or
> receive copies under s. 146.83(1) and each failure to provide a statement
> under s. 146.83(2); and costs and reasonable actual attorney fees incurred
> by that person in an action under this paragraph.  <u>It is not a prerequisite to
> an action under this paragraph by the person whose records are released in
> violation of s. 146.82, who was denied the right to inspect or receive a copy
> of records under s. 146.83(1) or who was not provided a statement required
> under s. 146.83(2) that he or she suffer or be threatened with actual
> damages.</u>

1991 A.B. 91, 1991 Wis. Act 39 (emphasis added).  Governor Thompson used his partial-

veto power to strike the emphasized language (along with other language that does not

need to be discussed here), and he made the following statement in his veto message:

> [Wis. Stat. § 146.84(1)(b)] also provides that an individual need not suffer or
> be threatened with actual damages in order to bring an action under this
> section.  I am vetoing this provision because it exposes the record holder to
> the possibility of frivolous or nuisance litigation.

Veto Message on 1991 A.B. 91, 1991 Wis. Act 39, at p. 33.  Aurora contends that this

legislative history shows that a person may not maintain a cause of action under Wis. Stat.

§ 146.84(1)(b) unless he or she can prove actual damages.

As already noted, when the text of a statute is clear, the court may not use

legislative history for any reason other than to confirm or verify a plain-meaning

interpretation—the court may not use "extrinsic sources of interpretation to vary or

contradict the plain meaning of a statute."  <u>Kalal</u>, 271 Wis. 2d at 666–67.  Here, as already

24

discussed, the text of the statute as it appears today is clear,[14] and so it is the meaning of that text, not Governor Thompson's intent in 1991, that controls.  See id. at 662 ("It is the enacted law, not the unenacted intent, that is binding on the public."). I also note that interpreting the statute to conform to Governor Thompson's intent would be particularly inappropriate in the present case.  This is so because his intent directly conflicted with the legislature's intent in enacting Wis. Stat. § 146.84(1)(b).  As the above legislative history shows, the legislature wanted a person to be able to maintain a cause of action under Wis. Stat. § 146.84(1)(b) without suffering or being threatened with actual damages, and Governor Thompson did not.   Even if courts were permitted to interpret statutes in accordance with the intent of lawmakers rather than the meaning of the text, it would not follow that the governor's intent concerning text that he did not veto would trump the intent of the legislators who enacted that text.  The text that was not vetoed was the product of the checks and balances built into the political process, and it would upset the compromise that resulted from that process to simply adopt the intent of one of the participants in the process.  This is precisely why it is the meaning of the statute's text, and not the intent of lawmakers, that controls.  Id. at 662, 667.

Accordingly, the plaintiffs are entitled to proceed with their claims even if they cannot prove actual damages.

---

[14]The text of the statute as it appears today consists of language that survived the governor's partial veto in 1991 along with language added by an amendment passed by the legislature in 1999.  See 1999 A.B. 428, 1999 Wis. Act 79.

25

### III. CONCLUSION

For the reasons stated above, I will not adopt the bankruptcy court's recommendation that Aurora's motions for summary judgment be granted. Instead, I conclude that those motions must be denied. Because this means that these proceedings will continue, I will withdraw the reference pursuant to 28 U.S.C. § 157(d).

Accordingly, **IT IS ORDERED** that Aurora's motions for summary judgment are **DENIED**.

**IT IS FURTHER ORDERED** that the references of the <u>Ortiz</u> and <u>Bembenek</u> adversary proceedings to the bankruptcy court are **WITHDRAWN**.

**FINALLY, IT IS ORDERED** that a status conference will be held on **September 11, 2012 at 10:30 a.m.**, in Room 390 of the Federal Courthouse located at 517 East Wisconsin Avenue, Milwaukee, Wisconsin, for the purpose of scheduling further proceedings.

Dated at Milwaukee, Wisconsin, this 21st day of August 2012.

s/ Lynn Adelman
LYNN ADELMAN
District Judge

26